## John O'Neill *vs.* Lowell Machine Shop.

Middlesex.   March 16, 1905. — November 28, 1905.

Present: Knowlton, C. J., Morton, Lathrop, Hammond, Loring, & Braley, JJ.

*Negligence,* Employer's liability.

If a dull and stupid boy a little over fourteen years of age, employed in a machine shop, is for the first time set at work upon a speed lathe, a complicated machine used for polishing conical metal caps while they are revolving one thousand times a minute, and the work of adjusting the various parts of the machine to each other preparatory to the act of polishing requires a considerable degree of care, strength and skill, and if, before the boy is set to work, a second hand spends about five minutes showing him how to operate the machine and polish the caps, and polishes a few caps for him, but says nothing about the danger of a cap flying out of the lathe and hurting the boy if it does so, and if about twenty minutes later, after the boy has polished seven or eight caps without accident and has been polishing another for about two minutes, the cap suddenly jumps out of the lathe and hits the boy in one of his eyes, destroying its sight, it is a question of fact whether the employer has been negligent in performing its duty to instruct the boy.

Tort by a boy, employed in the defendant's machine shop at Lowell, for the loss of an eye incurred while operating a machine known as a speed lathe used, among other things, for polishing iron caps or rolls, which are a part of cotton spinning frames manufactured by the defendant.   Writ dated January 16, 1904.

In the Superior Court the case was tried before *Wait,* J.   At the close of the evidence the judge ordered a verdict for the defendant.   The plaintiff excepted to this ruling, and at his request the judge reported the case for determination by this court.

The case was argued at the bar in March, 1905, before *Knowlton,* C. J., *Morton, Lathrop, Barker,* & *Hammond,* JJ., and afterwards was submitted on briefs to all the justices except *Sheldon,* J.   Mr. Justice Barker died before the decision of the case.

*A. S. Howard,* for the plaintiff.

*F. E. Dunbar,* (*G. H. Spalding* with him,) for the defendant.

HAMMOND, J.   The plaintiff, a boy, while working for the defendant upon a speed lathe, was injured.   Before working for the defendant he had been employed for two or three weeks as a bobbin boy and two weeks tying knots on a creeler.   About sixteen months before the accident he worked for the defendant a day and a half, polishing rolls or caps on a speed lathe similar to that by which he was injured.   He was hurt at that time by the catching of his jumper in the machine, and was taken off and set to work as a tool boy, in which work he continued up to the day of the accident.   His duties as a tool boy were to collect tools and parts of machines and carry them to the tool room to be sharpened.

The lathe was used in polishing iron caps, and the cap, after being fastened in the machine, was turned very rapidly, so as to make one thousand revolutions in a minute.   These caps were conical in shape, about a foot long, three and one half inches wide at the base, and somewhat rounded at the top.   They weighed about two pounds each.   There was a round hole in the top, and they were fastened into the lathe by means of an arbor, which is a round iron rod about a foot and a half long, tapering from a diameter about half an inch at one end to one quarter of an inch at the other.   This arbor was passed through the cap, so that the small end would come through a hole a short distance at the apex of the cone, and the cap was forced down by a blow so as to make it tight upon the arbor.   In the centre of the arbor, at each end, a hole about one eighth of an inch in diameter was drilled.   The arbor, with the cap upon it, was placed between the head-stock and tail-stock of the machine, the head-stock being a stationary iron rest, in which a live centre is adjusted.   One end of this live centre is connected with a round and rather thick iron disc, to which is attached a pulley that supplies the power.   The other end is bevelled to a point, which fits into the end of the arbor.   The tail-stock is another stationary iron rest, in which is adjusted a dead centre, which in like manner is bevelled to a point, and fits into the other end of the arbor.   By means of a small wheel and screw this is moved up to its place when the arbor and cap are put in, and

is brought in contact with the end of the arbor. The point of contact of the arbor with the dead centre is oiled before the machine is set in motion. There is a check nut on the tail-stock to bind the socket and hold it firm after it has been adjusted by the wheel so that the end of the arbor and the dead centre are in contact. It appeared that the bevel point of the dead centre would wear with the revolutions of the arbor upon it, and it was the duty of the defendant's overseers to see that it was kept properly pointed. When in perfect form the bevel at the point was at an angle of sixty degrees. While the plaintiff was polishing one of these caps it flew out of its place in the machine, and struck him in the eye.

The lathe on which the accident happened was set up in court at the trial, and it was shown that in operating it "the following acts occurred in running it."

"(1) Insert the arbor through the hole in the cap and by a blow force the cap down on the tapering arbor as far as it would go. This left, with caps which the plaintiff was polishing at the time of the accident, a space of about half an inch between the small end of the arbor and the top of the cap, this end of the arbor being, as aforesaid, about one quarter of an inch in diameter.

"(2) Place the small end of the arbor in the jaws of the chuck far enough to be held firmly and yet so as to leave a space between the jaws of the chuck and the top of the cap.

"(3) Tighten the screw nut in the chuck by means of the wrench handle. (Upon the machine in question the point of applying the wrench was about level with the plaintiff's shoulder.)

"(4) Move the socket containing the dead centre toward the big end of the arbor by means of the wheel, until the point of the dead centre enters and fits into the hole in the arbor.

"(5) Oil the end of the dead centre where it entered the arbor.

"(6) Tighten the screw nut on the dead centre."

It appeared that when the machine was in motion the live centre, chuck and arbor with the cap upon it revolved at a speed of one thousand revolutions per minute, while the dead centre remained still, and that the plaintiff's work at the time of the

accident was to polish the revolving cap by applying a piece of emery cloth to its surface.

One Hartley, the second hand in the room where the accident occurred, called for the defendant, testified on cross-examination "that the jaws of the chuck which the plaintiff used upon the lathe at the time he was hurt were not corrugated or grooved in any way, but were flat and came together so as to grasp the round end of the arbor like the jaws of a monkey wrench; and that, if by any reason the arbor became disengaged from the dead centre, the centrifugal force of the arbor and cap moving at the rate of one thousand revolutions per minute might cause an arbor which had been properly tightened in the chuck to work loose in the chuck and jump out of the lathe with force." On re-direct examination he testified "that he should expect the arbor to break before slipping out."

It appeared that there would be a tendency for the arbor with the cap upon it to jump out of the lathe by its centrifugal force when the machine was in motion, if the small end of the arbor were not properly tightened in the chuck by means of the wrench handle; or if the point of the dead centre had not been properly adjusted into the hole in the arbor by means of the wheel; or if the check nut in the dead centre had not been properly tightened; or if the point of the dead centre were so worn or blunted as not to fit properly into the hole of the arbor. It further appeared that there would be such a tendency if the end of the dead centre were not properly oiled; since the end of the dead centre might thus burn off for lack of lubrication and allow the arbor to fly out.

The defendant introduced evidence to show that with the chuck properly tightened an arbor could not be thrown out by the centrifugal force. It appeared that it took some strength to tighten the check nuts on the chuck and the tail-stock respectively.

Without stating the evidence further in detail, it is sufficient to say that this was apparently a complicated machine, and that the work of adjusting the various parts to each other preparatory to the act of polishing required a considerable degree of care, strength and skill.

The plaintiff testified "that Mr. Hartley set him to work upon

the machine about three o'clock P. M.; that before setting the plaintiff to work Mr. Hartley spent about five minutes showing him how to operate the machine and polish the caps; that by words and acts he showed him how to force the cap down upon the arbor, put the small end of the arbor into the chuck, tighten the check nut on the chuck, adjust the dead centre, tighten the check nut in the tail-stock and put some oil on the end of the dead centre; and that he polished a few caps for him in this way with emery paper; but that Mr. Hartley said nothing to the plaintiff about there being any danger that the arbor might jump out of the lathe or that the plaintiff might be hurt if it did; that Mr. Hartley then went away and the plaintiff polished seven or eight caps without accident; that he was hurt about twenty minutes after Hartley left; that at the time he was hurt he forced a cap on the arbor, put the small end of the arbor into the chuck, tightened the check nut on the chuck, adjusted the dead centre, tightened the check nut on the tail-stock and put some oil upon the dead centre; that he then turned on the power and had been polishing the cap for about two minutes with emery paper which he held in his hand when suddenly without warning the arbor and cap jumped out of the lathe and hit him in the left eye, destroying its sight." He further testified " that he did not examine the end of the dead centre while he was at work and that he did not know that there was any danger that the arbor, by reason of the point of the dead centre being worn or from any other cause, might jump out of the lathe, or that, if it did so, he might be injured." On cross-examination he testified that he tightened up the nuts before he began to use the cloth so that it would not fly out, and that he tightened the chuck because he did not want the arbor to fly out, although in answer to the direct question he said that he did not know that the cap and arbor would fly out if not tightened.

The evidence as to the age and mental capacity of the plaintiff was conflicting, but it would have warranted a finding that at the time of the accident he was only fourteen years and four months old, and was dull and stupid.

Such was the machine, and such the boy.

The chief contention of the plaintiff is that when placed face

to face with this machine he was not instructed as a boy like him should have been ; or, in other words, that he was not sufficiently instructed and that in this respect the defendant failed in its duty to him.

In view of the youth and inexperience of the plaintiff, the complicated nature of the machine, the number and character of the operations required in working it, the necessity that each should be properly done in order that the machine should work smoothly, the rapid revolution of the revolving parts, the consequent strength of the centrifugal force and the injury likely to happen if by reason thereof any of the parts should be projected from the machine, it cannot be said as matter of law that there was no failure of duty on the part of the defendant. A jury well may conclude that only by reiterated teachings and careful watching for some time could such a boy be brought to the degree of knowledge of such a machine as to enable him to work on it with reasonable safety. The question whether the defendant was negligent in its duty to instruct the plaintiff was. one of fact for the jury.

*Verdict set aside.*